STATE of Wisconsin, Plaintiff-Respondent,

v.

Danny C. EESLEY, Defendant-Appellant-Petitioner.

Supreme Court

*No. 97–1839–CR. Oral argument January 8, 1999.——Decided April 30, 1999.*

(Also reported in 591 N.W.2d 846.)

For the defendant-appellant-petitioner there was a brief by *Kyle H. Torvinen* and *Hendricks, Knudson, Gee, Hayden & Torvinen, S.C.*, Superior and oral argument by *Kyle H. Torvinen.*

For the plaintiff-respondent the cause was argued by *Michael R. Klos*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. WILLIAM A. BABLITCH, J. Petitioner, Danny C. Eesley (Eesley), requests review of a court of appeals' decision that affirmed his conviction. Eesley, urging a dismissal of the charges, argues that a writ of habeas corpus ad prosequendum used to deliver him to Wisconsin, was a detainer within the meaning of the Interstate Agreement on Detainers ("IAD" or "Agreement"). Therefore, he argues, according to the provisions of the IAD the failure to bring him to trial within 120 days of his arrival in Wisconsin results in mandatory dismissal of the Wisconsin charges. Because we conclude that a writ of habeas corpus ad prosequendum is not a detainer, the IAD was not triggered, and Eesley is not afforded the protections of the IAD. Accordingly, we affirm the decision of the court of appeals.

¶ 2. The facts pertinent to this appeal are limited, and for purposes of this appeal, are conceded. While Eesley was serving a federal prison sentence at the Federal Correctional Institution in Sandstone, Minnesota (FCI, Sandstone), he was charged with a total of 12 separate state offenses in the State of Wisconsin (State). Nine of the charges were filed in Ashland County and three charges were filed in neighboring Bayfield County. By stipulation, all charges were prosecuted in Ashland County.

¶ 3. On January 5, 1996, a State of Wisconsin Special Prosecutor filed a petition and writ of habeas corpus ad prosequendum addressed to the circuit court.

The petition stated that Eesley was "scheduled to appear for initial appearances on felony charges as shown in the attached criminal complaints in the above cases on January 26, 1996 at 9:30 A.M. in the Circuit Court for Ashland County, Wisconsin, before the Honorable Norman L. Yackel, Acting Circuit Judge. . . ."

¶ 4. Judge Yackel granted the petition and signed the writ of habeas corpus ad prosequendum which was directed to the U.S. Bureau of Prisons. The writ "commanded" that the Bureau of Prisons deliver Eesley to a member of the Ashland County Sheriff's Department on January 25, 1996, so that he could appear "in the above-titled action" on January 26, 1996. The writ also indicated that the Ashland County Sheriff's Department would return Eesley immediately after the proceeding unless otherwise ordered by the court.

¶ 5. The federal prison warden at the FCI, Sandstone delivered Eesley to the Ashland County Sheriff as requested by the writ of habeas corpus ad prosequendum. Eesley made his initial appearance on January 26, 1996, on 11 of 12 charges. (One of the Ashland County charges was not filed against Eesley until March 7, 1996.) After the initial appearance, Eesley was returned to the FCI, Sandstone.

¶ 6. On May 9, 1996, again pursuant to a writ of habeas corpus ad prosequendum issued by the Ashland County Circuit Court, Eesley was transferred from the FCI, Sandstone to the custody of the Ashland County Sheriff, for a preliminary hearing to be held on May 10, 1996. Eesley was also served with the original complaint regarding the twelfth charge that had been filed in Ashland County, and the court conducted the preliminary hearing on that charge as well. Following the

preliminary hearing, Eesley was again transported back to the FCI, Sandstone.

¶ 7. On June 4, 1996, again pursuant to a writ of habeas corpus ad prosequendum, Eesley was transported from FCI, Sandstone to the Ashland County Circuit Court to appear for arraignments scheduled for June 5, 1996. Following the arraignments, Eesley was transported back to the FCI, Sandstone. At no time at his initial appearance, preliminary hearing, or arraignments, was the IAD, Wis. Stat. § 976.05 (1993–94),[1] mentioned by any of the parties.

¶ 8. On July 10, 1996, Eesley filed a motion to dismiss all state charges pending against him on the grounds that the State had violated the IAD. The IAD requires that after a detainer is filed against a prisoner in another jurisdiction a trial must be held within 120 days of the arrival of the prisoner in the state in which trial is to be had on untried indictments, informations or complaints—the "speedy trial" provision. After a detainer has been filed and a prisoner transferred to a different state for prosecution, the IAD forbids returning the prisoner to the "sending" state until the trial is conducted—the "anti-shuttling" provision.

¶ 9. The sanction for noncompliance with the provisions of the IAD is dismissal of the pending charges with prejudice. Eesley alleged that the speedy trial and anti-shuttling provisions had been violated. He argued that a trial had not been held within 120 days of Eesley's arrival in Ashland County for his initial appearance on January 26, 1996, and he had been transported back to the FCI, Sandstone before the trial was completed. Therefore, Eesley argued, the IAD was

---

[1] All references to the Wisconsin Statutes are to the 1993–94 version unless otherwise noted.

violated and the criminal charges pending against him should be dismissed.

¶ 10.　The circuit court denied Eesley's motion for dismissal. Reserving all rights to appeal the circuit court's decision denying his motion, Eesley then entered into a plea agreement on all 12 state charges. Pursuant to the plea agreement, he was convicted of two counts of armed burglary and one count of arson. Again, by writ of habeas corpus ad prosequendum, Eesley was transferred from the FCI, Sandstone to appear for a plea and sentencing hearing, scheduled for December 13, 1996. The circuit court imposed a sentence for these three counts to run consecutively to other sentences already imposed against Eesley.

¶ 11.　Eesley appealed his convictions, arguing that the circuit court erred in denying his motion to dismiss based on violations of the IAD. The court of appeals affirmed the convictions, reasoning that the writ of habeas corpus ad prosequendum used to obtain Eesley's custody for prosecution of the state charges was not a detainer within the meaning of the IAD. Therefore, the court of appeals reasoned, the IAD was not triggered and the protections afforded by the Agreement were not available to Eesley. This court granted Eesley's petition for review.

¶ 12.　The issue presented by this case is whether a writ of habeas corpus ad prosequendum constitutes a detainer under the IAD. If it does, the IAD is triggered, and the State must comply with the speedy trial and anti-shuttling provisions of the Agreement. If a writ of habeas corpus ad prosequendum does not constitute a detainer, the IAD is not triggered.

¶ 13.　Whether a writ of habeas corpus ad prosequendum constitutes a detainer under the IAD and

thereby triggers the IAD and its protections requires that we interpret the IAD, Wis. Stat. § 976.05. This is a question of law that we review de novo. *State v. Sostre,* 198 Wis. 2d 409, 414, 542 N.W.2d 774 (1996). The goal of statutory interpretation is to discern the intent of the legislature. *Id.* We begin by looking at the plain language of the statute. *State ex rel. Reimann v. Circuit Court for Dane Cty.*, 214 Wis. 2d 605, 613, 571 N.W.2d 385 (1997). If the plain language does not set forth the legislature's intent, we may look to the history, scope, context, subject matter, and object of the statute. *Id.* at 614.

¶ 14.  The IAD was enacted by the Wisconsin Legislature in 1969, currently found at Wis. Stat. § 976.05. *See* § 63, ch. 255, Laws of 1969. The IAD prescribes "procedures by which a member State may obtain for trial a prisoner incarcerated in another member jurisdiction and by which the prisoner may demand the speedy disposition of certain charges pending against him in another jurisdiction." *United States v. Mauro,* 436 U.S. 340, 343 (1978). The IAD defines the "receiving state" as the state in which the trial on the indictment, information or complaint is to be conducted. § 976.05(2)(a). The "sending state" is the state in which the prisoner is incarcerated when he or she initiates disposition of untried offenses or when a prosecutor initiates a request for custody or availability of the prisoner. § 976.05(2)(b). For purposes of the IAD, the federal government is considered a state. § 976.05(2)(c).

¶ 15.  The central provisions of the IAD are Articles III and IV, enacted in Wisconsin as Wis. Stat. § 976.05(3) and (4). Generally, Article III, § 976.05(3)

(reprinted in part below),[2] provides procedures whereby a prisoner against whom a detainer has been lodged, can demand a speedy disposition of the charges. *Mauro*, 436 U.S. at 351. When a detainer is filed against a prisoner, the warden must promptly inform the prisoner of such detainer and of his or her right to demand disposition. *Id.*; § 976.05(3)(c). If the prisoner

[2] Wisconsin Stat. § 976.05(3) provides in pertinent part:

(3) ARTICLE III. (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, the prisoner shall be brought to trial within 180 days after the prisoner has caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his or her imprisonment and his or her request for a final disposition to be made of the indictment, information or complaint, but for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the department relating to the prisoner.

. . .

(d) Any request for final disposition made by a prisoner under par. (a) shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. . . .If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

255

makes such a request, the trial must commence within 180 days of the request. § 976.05(3)(a). If the receiving state fails to have a trial on the outstanding indictment, information or complaint within the prescribed time period and before the prisoner is transported back to the original place of imprisonment, the court is required to dismiss such charges with prejudice. § 976.05(3)(d).

¶ 16.   Article IV, Wis. Stat. § 976.05(4) (reprinted below),[3] provides the procedures whereby a prosecutor

---

[3] Wisconsin Stat. § 976.05(4) provides:

(4)   ARTICLE IV. (a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom the officer has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with sub. (5)(a) upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: provided that the court having jurisdiction of such indictment, information or complaint has duly approved, recorded and transmitted the request: and that there shall.be a period of 30 days after receipt by the appropriate authorities before the request is honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon the governor's own motion or upon motion of the prisoner.

(b)   Upon receipt of the officer's written request under par. (a), the appropriate authorities having the prisoner in custody shall furnish the officer with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. Said authorities simultaneously shall furnish all other officers and appropriate courts in the receiving state who lodged detainers against the prisoner with similar certificates and with notices informing them of the request for custody or availability and of the reasons therefor.

(c)   In respect to any proceeding made possible by this subsection, trial shall be commenced within 120 days of the arrival of the

in the receiving state lodges a detainer against a prisoner in a sending state and secures the prisoner's presence for disposition of the charges. *Mauro*, 436 U.S. at 351; § 976.05(4). Once a prosecutor has filed a detainer against a prisoner in another jurisdiction, he or she may secure the prisoner's presence by presenting the sending state with a "written request for temporary custody." § 976.05(4)(a). Such a written request may be a writ of habeas corpus ad prosequendum. *Mauro*, 436 U.S. at 362. A trial must be commenced within 120 days after the arrival of the prisoner in the receiving state. § 976.05(4)(c). If a trial is not held on the charges within 120 days or prior to the prisoner being returned to the original place of imprisonment, the charges no longer have any effect, and the court must enter an order dismissing the charges with prejudice. § 976.05(4)(e). *See also* § 976.05(5)(c).

¶ 17. A "detainer" is not defined in the IAD, Wis. Stat. § 976.05. Accordingly, we look to the history of the Agreement to discern the definition. The United States House and Senate reports defined a detainer as a

prisoner in the receiving state, but for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

(d) Nothing contained in this subsection shall be construed to deprive any prisoner of any right which the prisoner may have to contest the legality of the prisoner's delivery under par. (a), but such delivery may not be opposed or denied on the grounds that the executive authority of the sending state has not affirmatively consented to or ordered such delivery.

(e) If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment under sub. (5)(e), such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

" 'notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' " *Mauro*, 436 U.S. at 359 (quoting H.R. Rep. No. 91–1018, p.2 (1970); S. Rep. No. 91–1356, p. 2 (1970)).

¶ 18.   In contrast to a detainer, a writ of habeas corpus ad prosequendum is issued by a court "when it is necessary to bring a person who is confined for some other offense before the issuing court for trial." *Black's Law Dictionary* (6th ed. 1990) at 709. A court's authority to issue a writ of habeas corpus ad prosequendum is statutory. Courts have the power "to issue a writ of habeas corpus, to bring before them any prisoner for trial or as a witness." Wis. Stat. § 782.44.

¶ 19.   We rely on *Mauro*, the leading decision regarding writs of habeas corpus ad prosequendum and detainers under the IAD, to resolve this case. As in the present case, two of the defendants in *Mauro*, a consolidated case, were serving sentences in one jurisdiction when they were transferred to a different jurisdiction pursuant to a writ of habeas corpus ad prosequendum for prosecution on other charges. *Mauro*, 436 U.S. at 344. Before trial on the federal charges, the defendants were returned to their respective state prisons until shortly before their trials on federal charges. *Id.* at 345. The defendants filed motions to dismiss the federal charges, asserting that the anti-shuttling provisions of the IAD had been violated. *Id.* The United States Court of Appeals for the Second Circuit affirmed the district court's dismissal of the charges, determining that the writ of habeas corpus ad prosequendum was a detainer and had triggered the IAD and its protections. *Id.*

¶ 20.   The United States Supreme Court reversed the Second Circuit, relying in part on the several dis-

tinctions between a detainer and a writ to conclude that a writ of habeas corpus ad prosequendum is not a detainer. *Mauro*, 436 U.S. at 361. A writ of habeas corpus ad prosequendum can only be issued by a court. *Id.* at 358; Wis. Stat. § 782.44. In contrast, a detainer may be lodged against a defendant by a prosecutor or law enforcement officer. *Mauro*, 436 U.S. at 358; Wis. Stat. § 976.05(4)(a) (referring to "[t]he appropriate officer"). A writ requires the immediate presence of a prisoner whereas "a detainer merely puts the officials of the institution in which the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon his release from prison." *Mauro*, 436 U.S. at 358. A detainer is not enough to effectuate the transfer of a prisoner. Something more, such as a writ of habeas corpus ad prosequendum, is necessary to actually obtain the temporary custody of a prisoner. *Id.* Also, because writs must be immediately executed, they are valid for only a short period of time. In contrast, prior to the decision in *Smith v. Hooey*, 393 U.S. 374 (1969), that a defendant is entitled to a speedy trial though incarcerated elsewhere, detainers could be lodged against a prisoner for a very long time, often for the duration of the prisoner's sentence. *Mauro*, 436 U.S. at 358–59. *See also Sweeney v. State*, 704 N.E.2d 86, 97 (Ind. 1998). Because of these distinctions, the United States Supreme Court determined that a writ is not a detainer. *Mauro*, 436 U.S. at 349.

¶ 21. The *Mauro* court also recognized that the purpose of the IAD was to address specific problems caused by detainers. Prior to the enactment of the IAD, jurisdictions would file detainers in the jurisdiction holding the prisoner but then never act on the untried charges. The detainer might remain in the prisoner's

file for a long period of time without the requesting jurisdiction ever taking any action on it.

> When a state informed prison officials of the possibility of a future demand for the rendition of a prisoner, his status within the prison system was often profoundly affected. Such a prisoner might be treated as an escape risk, or be denied trusty status and other significant institutional privileges. The mere awareness that a detainer had been lodged could have a "corrosive" effect on a prisoner's attitude and diminish the likelihood of his taking advantage of whatever rehabilitative opportunities existed at the institution in which he was incarcerated. A filed detainer could affect the length as well as the terms of confinement by limiting the prospects for executive clemency and even reducing the likelihood of parole. Absent the power to expedite the prosecution of out-of-state charges, the prisoner often lost the possibility that the second sentence, if imposed at all, might run concurrently with the first.

Note, *Federal Habeas Corpus Review of Nonconstitutional Errors: The Cognizability of Violations of the Interstate Agreement on Detainers*, 83 Colum. L. Rev. 975, 978–79 (1983) (footnotes omitted). *See also Mauro*, 436 U.S. at 353 (citing H.R. Rep. No. 91–1018, p. 3 (1970); S. Rep. No. 91–1356, p. 3 (1970)). The IAD developed out of a growing concern about the effect outstanding detainers have on prisoners themselves and the prison system in general. *See generally Mauro*, 436 U.S. at 349–50. Thus, in its explicit findings, the IAD recognized that outstanding criminal charges in another jurisdiction "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." Wis. Stat. § 976.05(1).

¶ 22. The IAD serves two express purposes.[4] The first is to protect prisoners by "encourag[ing] the expeditious and orderly disposition of such [outstanding] charges [against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." Wis. Stat. § 976.05(1). The second purpose is to provide "cooperative procedures" to effectuate a more uniform and efficient system of interstate rendition. *Id. See also* Note, 83 Colum. L. Rev. at 977.

¶ 23. The problems associated with detainers and the need for "expeditious and orderly disposition" in the IAD do not arise if a writ of habeas corpus ad prosequendum is filed to obtain temporary custody of a prisoner for prosecution in another jurisdiction. *See Mauro*, 436 U.S. at 361. Because writs of habeas corpus must be executed immediately, *see* Wis. Stat. § 782.13 (requiring that writs of habeas corpus ad prosequendum be executed at the time and place specified in the writ), the IAD is not needed to achieve their expeditious disposition. *Mauro*, 436 U.S. at 360. This fact, combined with the long history of writs of habeas corpus ad prosequendum, convinced the *Mauro* Court that "Congress was well aware of the use of such writs by the Federal Government to obtain state prisoners and that when it used the word 'detainer,' it meant something quite different from a writ of habeas corpus *ad prosequendum.*" *Mauro*, 436 U.S. at 360.

---

[4] The Wisconsin Legislature enacted the Interstate Agreement on Detainers (IAD) in 1969, effective July 1, 1970. § 63, ch. 255, Laws of 1969. The United States Congress also enacted the IAD in 1970, joining the United States and District of Columbia as parties to the Agreement. Pub.L. 91–538; 18 U.S.C.A. App., pp. 585–620 (West, 1985).

¶ 24. Wisconsin also has a long history, dating to the first version of Wisconsin's Revised Statutes, of using writs of habeas corpus to obtain prisoners for trial. *See* § 50, ch. 124, R.S. 1849. We can presume that the legislature was aware of court authority to issue such writs when it enacted the IAD. *See Roberta Jo W. v. Leroy W.*, 218 Wis. 2d 225, 233, 578 N.W.2d 185 (1998) (citing *State v. Olson*, 175 Wis. 2d 628, 641, 498 N.W.2d 661 (1993)). *See also Mauro*, 436 U.S. at 360. As the *Mauro* Court concluded, the problems meant to be addressed by the IAD do not arise when a court uses a writ of habeas corpus ad prosequendum to obtain temporary custody of a prisoner for prosecution.

¶ 25. Based on all of the above, we hold that a writ of habeas corpus ad prosequendum is not a detainer under the IAD. Because a detainer was not filed in this case, the IAD and its protections were never triggered.

¶ 26. Eesley argues that the writ of habeas corpus ad prosequendum in this case served as a detainer because the criminal complaints for the pending charges were attached to the writ. He argues that attaching the criminal complaints notified the FCI, Sandstone that Eesley was facing pending criminal charges in Wisconsin. However, there is nothing in the record to support Eesley's assertion that the writ, directed to the U.S. Bureau of Prisons, actually had the pending criminal complaints attached. In fact, the record indicates that the complaints were attached to the petition for the writ but not to the writ itself when it was sent to the U.S. Bureau of Prisons.

¶ 27. The prosecutor filed a "Petition & Writ of Habeas Corpus ad Prosequendum" with the circuit court. The Petition explained that Eesley was sched-

uled to appear for his initial appearances "on the felony charges as shown in the attached criminal complaints . . . ." Based on this, the prosecutor requested a writ of habeas corpus ad prosequendum directing the U.S. Bureau of Prisons to release Eesley to the Ashland County Sheriff's Department so that he could appear in the action.

¶ 28. The writ of habeas corpus ad prosequendum, signed by the circuit court, commanded the U.S. Bureau of Prisons to deliver Eesley to the Ashland County Sheriff's Department so that he could appear in the "above-entitled action." The writ itself said nothing about attached criminal complaints. Although the criminal complaints may have been attached to the petition, there is simply nothing in the record to indicate that the criminal complaints were attached to the writ of habeas corpus ad prosequendum when it was sent to the U.S. Bureau of Prisons.

¶ 29. Even if criminal complaints were attached to the writ of habeas corpus ad prosequendum, our determination would be no different. As discussed above, a writ and detainer are very different documents. A writ demands the presence of a prisoner at a certain time and at a certain place, whereas a detainer is simply a notice that there are outstanding charges against the prisoner. Attaching criminal complaints to a writ does not change the nature and function of a writ—it still demands the presence of the prisoner and the problems associated with detainers do not arise.

¶ 30. Eesley also argues, relying on *United States ex rel. Esola v. Groomes*, 520 F.2d 830, 837 (3d. Cir. 1975), that the IAD was meant to be the exclusive means by which a prisoner could be transferred from a state in which he or she is incarcerated to another state for prosecution. We are not persuaded by *Groomes* for

two reasons. First, the *Groomes* court stated that the IAD was the exclusive means of transfer "when it is available," *Groomes*, 520 F.2d at 837, and "if it is available," *id.* at 838. However, as discussed above, a writ is not a detainer and until a prosecutor files a detainer with the "sending state," the IAD is not triggered and its provisions and remedies are not available.

¶ 31.   Furthermore, *Groomes* was decided before the United States Supreme Court's decision in *Mauro*. Although not mentioning *Groomes*, the Court in *Mauro* determined that the IAD is not the exclusive means by which to transfer prisoners between jurisdictions. As noted above, the IAD is only triggered if the receiving state files a detainer. *Mauro*, 436 U.S. at 343. If the receiving state fails to file a detainer it may nevertheless obtain a state prisoner by filing a writ of habeas corpus ad prosequendum. *Mauro*, 436 U.S. at 364 n. 30. This determination is consistent with legislative history cited by the dissent in *Mauro*, 436 U.S. at 367, that the IAD was not meant to be the exclusive means of transferring a prisoner between jurisdictions. *Id.* at 364 n. 30. Since *Mauro*, many jurisdictions have followed this decision and determined that the IAD is not the exclusive means of obtaining temporary custody of a prisoner from one jurisdiction for prosecution of charges in another jurisdiction. *See, e.g., Sweeney*, 704 N.E.2d 86; *People v. McLemore*, 311 N.W.2d 720 (Mich. 1981) (per curiam); *State v. Fender*, 268 S.E.2d 120 (W.Va. 1980).

¶ 32.   Eesley finally argues that the IAD must be the exclusive means of transferring prisoners from federal prison to a state because federal jurisdictions are not required to honor writs of habeas corpus ad prose-

quendum issued by state courts.[5] He argues that because there is no guarantee that state court-issued writs will be honored by the federal authorities, the purposes of the IAD would be defeated. We disagree.

¶ 33. Early in our country's history, federal courts interpreted "habeas corpus" to be a "generic term including the writ 'necessary to remove a prisoner in order to prosecute him in the proper jurisdiction wherein the offense was committed.' " *Mauro*, 436 U.S. at 357 (citing *Ex parte Bollman*, 4 Cranch 75 (1807)). "Since the time of *Ex parte Bollman*, the statutory authority of federal courts to issue writs of habeas corpus *ad prosequendum* to secure the presence, for purposes of trial, of defendants in federal criminal

---

[5] At oral argument, counsel for Eesley raised a constitutional argument for the first time. Without citing any case law, Eesley argued that U.S. Const. Art. IV, § 2, cl. 2, the "executive privilege" clause, prohibits federal authorities from honoring a writ of habeas corpus ad prosequendum issued by a state court. He argued that a transfer of a prisoner across state lines can only be achieved if the executive authorities of such states confer.

This court may, in its discretion, consider a constitutional issue raised for the first time on appeal. *State v. Whitrock*, 161 Wis. 2d 960, 970, 468 N.W.2d 696 (1991) (citing *In Interest of Baby Girl K.*, 113 Wis. 2d 429, 448, 335 N.W.2d 846 (1983)). "This court will exercise this discretion if 'it is in the best interests of justice to do so, if both parties have had the opportunity to brief the issue and if there are no factual issues that need resolution.' " *Whitrock*, 161 Wis. 2d at 970 (quoting *Baby Girl K.*, 113 Wis. 2d at 448).

Because this issue was raised for the first time at oral argument before this court, neither party in this case briefed the issue of the "executive privilege" clause of the United States Constitution. Therefore, we decline to exercise our discretion to consider this issue.

cases, including defendants then in state custody, has never been doubted." *Mauro*, 436 U.S. at 357–58. As the *Mauro* Court noted, the authority of courts to issue writs of habeas corpus ad prosequendum has a history dating long before the IAD. *Id.* at 358.

¶ 34. Wisconsin state courts also have authority "to issue a writ of habeas corpus, to bring before them any prisoner for trial or as a witness." Wis. Stat. § 782.44. Wisconsin courts have had this authority to issue writs of habeas corpus ad prosequendum since 1849, the beginning of Wisconsin's statehood. § 50, ch. 124, R.S. 1849 (Courts have the power "to issue a writ of habeas corpus, when necessary to bring before them any prisoner for trial, in any criminal case lawfully pending in the same court. . . .").

¶ 35. Contrary to Eesley's argument, both statutes and case law support state courts' authority to issue writs of habeas corpus ad prosequendum directed to federal authorities. Wisconsin Stat. § 782.44, authorizing writs of habeas corpus ad prosequendum, makes no distinction between Wisconsin courts issuing such writs to other state authorities or to federal authorities.

¶ 36. Case law also does not support Eesley's argument. While it is true that federal authorities may not be compelled to honor writs of habeas corpus ad prosequendum issued by state courts, federal authorities have consistently honored such writs as a matter of comity. *Ponzi v. Fessenden*, 258 U.S. 254, 261–62 (1922). *See also State ex rel. Fredenberg v. Byrne*, 20 Wis. 2d 504, 508, 123 N.W.2d 305 (1963); *People v. Gaval*, 294 N.W.2d 215, 217 (Mich. Ct. App. 1980); *Commonwealth v. Florence*, 387 N.E.2d 152, 153 (Mass. Ct. App. 1979). "[W]e have no doubt that [com-

ity] exists and is to be exercised with the consent of the Attorney General. In that officer, the power and discretion to practice the comity in such matters between the federal and state courts is vested." *Ponzi*, 258 U.S. at 262.

¶ 37.   We recognize that a federal institution may not be compelled to honor a writ of habeas corpus ad prosequendum issued by a state court. However, if a federal authority refuses to honor a writ of habeas corpus ad prosequendum issued by a state court as a matter of comity, the state can turn to the IAD to obtain temporary custody of the prisoner. Once a state has lodged a detainer against a prisoner, the state must comply with all the provisions of the IAD. That is not the case here.

¶ 38.   In the present case, the State did not lodge a detainer against Eesley in the federal prison. Rather the prosecutor petitioned the circuit court for a writ of habeas corpus ad prosequendum which the court granted and forwarded to the federal prison warden. Because a writ of habeas corpus ad prosequendum is not a detainer, we conclude that a the IAD was never triggered in this case. Therefore, the State did not need to comply with the anti-shuttling provision of Wis. Stat. § 976.05(4)(e) nor the speedy trial provision of § 976.05(4)(c).[6]

*By the Court.*—The decision of the court of appeals is affirmed.

---

[6] Eesley filed a motion to supplement the record in this case. Because we resolve the issues presented by this case without consideration of the materials sought to be submitted by Eesley, we deny his motion to supplement the record.