**Leroy G. BUHL, Petitioner,**

v.

**Harley G. LAPPIN, et al., Respondents.**

**No. CIV.A.3:00–CV–1557.**

United States District Court,
M.D. Pennsylvania.

May 29, 2001.

---

11. The relevant portions of the settlement can be found in this Memorandum on pages 368–369.

Leroy G. Buhl, #229691, Trenton State Prison, Trenton, NJ, pro se.

Larry B. Selkowitz, Stevens & Lee, Harrisburg, PA, Charles A. Bressi, Jr., Claude A.L. Shields, Schuylkill County Office of the District Attorney, Pottsville, PA, for respondents.

## *MEMORANDUM AND ORDER*

CONABOY, District Judge.

Presently before the Court is Magistrate Judge J. Andrew Smyser's March 12, 2001 Report and Recommendation (Doc. 21) regarding Leroy G. Buhl's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Petitioner, proceeding *pro se*, filed the instant petition on August 31, 2000.[1] The Magistrate Judge recommends that Petitioner's habeas corpus ac-

---

**1.** As noted in the Docket Proceedings, the Magistrate Judge issued the Petitioner an administrative order in accordance with *United States v. Miller,* 197 F.3d 644 (3d Cir.1999) and *Mason v. Meyers,* 208 F.3d 414 (3d Cir. 2000). (Doc. 2). Petitioner elected to keep his the petition as filed as a § 2254. (Doc. 3).

tion be denied without a hearing because the Petitioner waived his Interstate Agreement on Detainers Act ("IAD") rights. (Doc. 21). On March 26, 2001, the Petitioner filed objections to the Magistrate Judge's recommended disposition. (Doc. 22). Because the Petitioner has filed objections (Doc. 22), we shall review the matter *de novo*. *See Cipollone v. Liggett Group, Inc.*, 822 F.2d 335, 340 (3d Cir. 1987), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987).

Petitioner objects generally stating that the "Magistrate is clearly erroneous," (Doc. 22, p. 1), and that the Petitioner did not procedurally default on enforcing his rights under the IAD. (Doc. 1). After a thorough reexamination of the record and carefully reviewing the matter *de novo,* we shall adopt the disposition set forth in the Report and Recommendation. (Doc. 21).

*BACKGROUND*

Leroy G. Buhl filed this petition for a writ of habeas corpus on June 22, 2000. This file originated in the Eastern District of Pennsylvania, and was removed to this jurisdiction on August 31, 2000. He is currently incarcerated in Trenton State Prison, Trenton, New Jersey pursuant to a twenty to forty year sentence imposed by the Schuylkill County Court of Common Pleas upon multiple counts of rape, incest and unlawful restraint. Sentence was imposed in 1988.

Petitioner claims that he is in custody in violation of his federally protected rights because his rights under the Interstate Agreement on Detainers Act were violated in the events preceding his Schuylkill County trial and conviction. (Doc. 1). Here, Schuylkill County took temporary custody of the Petitioner from the United States. Petitioner was initially taken into custody by Schuylkill County to answer the charges upon which he was later convicted in October, 1988. On December 21, 1988, by a Court of Common Pleas of Pennsylvania, Schuylkill County Order, the Petitioner was released from state custody to federal custody. By an April 3, 1989 writ of habeas corpus ad prosequendum issued by the Schuylkill County Court, he was taken into state custody for a hearing upon pretrial motions. (Doc. 9, Ex. 2). Following the pretrial motions, the Petitioner was returned to federal custody. Via a September 1, 1989 writ of habeas corpus ad prosequendum, he was taken into state custody for trial. (Doc. 9, Ex. 3). After his conviction, the Petitioner was returned to federal custody. (Doc. 9, Ex. 5). Another writ of habeas corpus ad prosequendum issued on August 9, 1990 returned the Petitioner to the custody of Schuylkill County for sentencing. (Doc. 9, Ex. 6). Following sentencing, Petitioner was again returned to federal custody.

■ Under the Interstate Agreement on Detainers Act, to which Pennsylvania is a party[2], 42 Pa.C.S. § 9101, *et seq.,* a writ of habeas corpus ad prosequendum is a request for temporary custody. *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *United States v. Williams,* 615 F.2d 585, 588 (3d Cir. 1980). Under most circumstances, the IAD requires that a requesting jurisdiction try a prisoner before returning him to the

---

**2.** 142 Pa.C.S.A. § 9101 is the Pennsylvania equivalent of Interstate Agreement on Detainers Act, 18 U.S.C.A. The Act is currently adopted by 48 states, the District of Columbia and the United States. By enacting the statute, Congress thereby established a simple procedure which permits the speedy disposition of any untried indictment and the dismissal of any untried charges where the indicting state has not responded to a prisoner's request within the required period. *Grant v. Hogan,* 505 F.2d 1220, 1223 (3d Cir.1974). (*See* FN 5).

custody of the original jurisdiction. *Williams*, 615 F.2d at 588.

■ A violation of the IAD is a violation of a federally protected right, even for a state prisoner whose temporary custody is assumed by another state, for the reason that the United States is a party to the Agreement. *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981).

In his Report and Recommendation of March 12, 2001, Magistrate Judge Smyser addressed initially whether the one-year statute of limitations applicable to § 2254 petitions applies to this case. (Doc. 21, pp. 3). The Magistrate Judge found, relying on *Burns v. Morton*[3], 134 F.3d 109, 111 (3d Cir.1998), that the petition was timely filed. We concur with this finding and in the interest of economy we adopt that portion of the Report and Recommendation, verbatim without restating it here. (Doc. 21, pp. 3–6). In addition, the Magistrate Judge found that the Petitioner did demonstrate that he properly exhausted his state remedies pursuant to *O'Halloran v. Ryan*, 835 F.2d 506, 508 (3d Cir.1987), and he fairly presented his claim to the state courts pursuant to *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). We concur with this finding and adopt it verbatim from the Report and Recommendation. (Doc. 21, pp. 6–9).

*DISCUSSION*

■ In his complaint, the Petitioner claims that the trial court lacked jurisdiction to impose sentence on him because of "[v]iolation(s) of the Inter-state agreement on Detainers Act." (Doc. 1, p. 9). The Petitioner seeks to "expunge the illicit sentence." (*Id.* at 10).

The Respondents claim that this is a successive petition, that raises claims that were not presented in his prior petition and therefore should be dismissed. (Doc. 9). Furthermore, the Respondent claims that the IAD claim could have been raised before trial, and none of the exceptions under the state post conviction relief act as amended in 1988 excused the waiver. (Doc. 19).

The Report and Recommendation (Doc. 21), notes that the Respondent acknowledges that in considering the Petitioner's post conviction petition, the Pennsylvania courts may have overlooked the availability of relief under the now deleted § 9543(a)(2)(v). However, the Respondent asserts that even if the Pennsylvania courts had recognized the IAD claim as cognizable under § 9543(a)(2)(v), the Petitioner would have been required to demonstrate that the claim had not been waived. 42 Pa.C.S. § 9543(a)(3), as amended, *Commonwealth v. Appel*, 547 Pa. 171, 689 A.2d 891 (1997); *Commonwealth v. Rowe*, 411 Pa.Super. 363, 601 A.2d 833 (1992). (Doc. 21).

Under 42 Pa.C.S. § 9544, as amended in 1988, "a claim was deemed waived 'if the petitioner failed to raise it and if it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or other proceeding actually conducted or in a prior proceeding actually initiated under this subchapter.'" 42 Pa. C.S. § 9544(b). (Doc. 21, p. 9).

It is the Respondent's position that the claim of an IAD violation could have been raised before trial and that none of the

---

**3.** In *Burns*, the court held that petitioners who have state convictions that became final prior to April 24, 1996, the date the one-year limitation in 28 U.S.C. § 2244(d) was enacted, had one year from that date to timely file a petition. The Petitioner's conviction became final prior to April 24, 1996, thus the Petitioner had until at least April 23, 1997 to file a timely petition. On July June 5, 1995, Petitioner timely filed a petition that raised his IAD claim as well as a claim of ineffective assistance of counsel. (Doc. 21).

exceptions excused the waiver. The Respondent also asserts that the Petitioner now has no state forum in which to present his IAD claim. Under Pennsylvania's Post Conviction Relief Act ("PCRA"), as amended in 1999, § 9543(a)(2)(v) was deleted. A second or subsequent filing by the Petitioner would therefore be time-barred. Under the PCRA as amended in 1999, a petition for post conviction relief such as the Petitioner's, including a second or subsequent petition, must be presented within a year after the underlying conviction becomes final on direct appeal. 42 Pa.C.S. § 9545(b)(1). The Petitioner, whose conviction was final before January 16, 1996, was afforded one year during which a petition for post conviction relief would be considered timely filed.

When the above is applied to the Petitioner's IAD claim it is clear that the claim is procedurally barred and therefore is exhausted. *Coleman v. Thompson,* 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir.1999)(citing 28 U.S.C. § 2254(b)).

It is well established that federal courts may not consider the merits of the claims that have been procedurally defaulted unless the petitioner establishes "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default. *Id.* Therefore, it is appropriate to address the question whether there was cause and prejudice for the Petitioner's procedural default. The Petitioner had and exercised a rational interest that caused him to have waived his right not to be returned to federal custody. In fact, the Petitioner made a specific and articulated choice to return to federal custody from the state court where the new charges were pending. In light of this and the aforementioned, we find that there was not preju-

dice to the Petitioner's interests, nor a miscarriage of justice in this instance.

On December 21, 1988, the Petitioner was present in Schuylkill County Court for the purpose of a hearing on the motions pertinent to his then pending state charges. The court engaged the Petitioner in a colloquy concerning his place of prospective pretrial custody. The court noted that the Petitioner's federal trial was to begin in January and that the pending state charges would not be ready for trial until the pending motions were resolved. The Petitioner replied, "Well, sir, I'm quite willing to go to federal custody. I would prefer going to Lewisburg [federal penitentiary] or Otisville, New York [federal penitentiary]." The Petitioner also voiced numerous complaints about conditions and treatment which he alleged he was subject to while at the Schuylkill County facility. (Doc. 15, pp. 13–14). Under Pennsylvania law, this exchange was sufficient for a waiver of the Petitioner's rights under the IAD. *Commonwealth v. Mallon,* 279 Pa.Super. 350, 421 A.2d 234, 239 (1980)(IAD violation waived where individual voluntarily asked to return to New Jersey because he liked facilities better).

█ The IAD right to be tried while in the custody of a receiving jurisdiction serves the presumed interest of a detained prisoner with criminal charges pending to remain in the custody of the charging jurisdiction until the pending charges are adjudicated. It is a right of such a nature however, that in certain situations it may not be in the best interests of the prisoner to avail himself of the right. In an instance where a necessary delay is to occur in the pretrial process, where prison conditions or sentencing credits argue in favor of a return to another jurisdiction and where no countervailing consideration(s) argue in favor of remaining in the charging jurisdiction, the reasonable and fully in-

formed prisoner might well opt to be returned to the jurisdiction from which his custody had temporarily been taken by the charging jurisdiction. If the charging jurisdiction in a case like this refused the prisoner's election to be returned to the original jurisdiction, the statutorily granted right would be converted into a mechanism to deny to some prisoners the option that they would have otherwise taken. So to deny a reasonable request, such as the Petitioner's, would be against public policy, and assuming all parties were in agreement, unreasonable, as well. While it is, of course, imperative that the prisoner be given the option and that the process of election be an unhampered and voluntary one, there is no basis to apply some particularly skeptical examination to the voluntariness of a prisoner's election not to avail himself of his right to remain in the charging jurisdiction until the final disposition of the charges rather than to be returned to the sending jurisdiction. Usually, any jurisdiction's criminal courts would certainly find that in some instances the reasonable prisoner/defendant would choose to remain in the charging jurisdiction while in other instances the reasonable prisoner/defendant would choose to be returned to the sending jurisdiction to be in turn returned back to the charging jurisdiction. What must not be forgotten is that the Act affords the prisoner/defendant the right to remain in the charging jurisdiction *if that is his choice.*

In the case before us, as the Magistrate Judge notes in his Report and Recommendation, there is no basis whatsoever presented or apparent to consider the Petitioner's election not remain in the custody of the charging jurisdiction until his trial not to have been a voluntary decision or not to have been a decision that was in his best interests. (Doc. 21). There is certainly no showing or appearance of prejudice to the Petitioner's interests vis-à-vis the pending charges and the actual conviction which is the subject of the instant § 2254 habeas corpus petition that resulted from or was caused by the Petitioner's movement to and from the charging jurisdiction.

We find from a review of the record that the Petitioner did in fact waive his statutory rights under the IAD and he has no basis in law to resurrect this claim in this court pursuant to § 2254. When addressing the state trial court in Schuylkill County he stated prior to his trial that he desired to be housed elsewhere, in federal custody.

■ Finally, notwithstanding the aforementioned, we question whether the IAD's anti-shuffling protections were ever even triggered in this case. We look to *Wisconsin v. Eesley,* 225 Wis.2d 248, 591 N.W.2d 846 (1999) (cert. denied), which has a factual situation quite similar to this one. While this Court is not bound by *Eesley,* the reasoning set forth is compelling and we are inclined to follow it.

■ In *Eesley,* the defendant was serving a sentence in a federal correctional facility when he was charged with several criminal acts in the Circuit Court[4] and convicted of the offenses. The defendant appealed and the Wisconsin Court of Appeals affirmed (*see* 217 Wis.2d 291, 577 N.W.2d 387 (1998)) and the defendant sought further review. The Wisconsin Supreme Court held that a writ of habeas corpus ad prosequendum, under which the defendant was transferred from a federal correctional facility, was not a "detainer" under the Interstate Agreement on Detainers, such that the IAD's speedy trial and anti-shuffling protections were

---

4. Wisconsin's equivalent of Pennsylvania's Court of Common Pleas.

triggered. *Id.* Additionally, in parallel to the case at bar, in *Eesley*, pursuant to a writ of habeas corpus ad prosequendum, he was transferred from a Federal Correctional Institution (FCI–Sandstone) to the County Circuit Court to appear for arraignments. The Defendant in *Eesley* was then transferred back to the federal facility. At no time at his initial appearance, preliminary hearing, or arraignments, was the IAD, Wis. Stat. § 976.05 [5]

5. Wis. Stat. § 976.05, in pertinent part:

(1) Article I. The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures.

(2) Article II. As used in this agreement:

(a) "Receiving state" means the state in which trial is to be had on an indictment, information or complaint under sub. (3) or (4).

(b) "Sending state" means a state in which a prisoner is incarcerated at the time that the prisoner initiates a request for final disposition under sub. (3) or at the time that a request for custody or availability is initiated under sub. (4).

(c) "State" means a state of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; and the Commonwealth of Puerto Rico.

(4) Article IV. (a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom the officer has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with sub. (5)(a) upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: provided that the court having jurisdiction of such indictment, information or complaint has duly approved, recorded and transmitted the request: and that there shall be a period of 30 days after receipt by the appropriate authorities before the request is honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon the governor's own motion or upon motion of the prisoner.

(b) Upon receipt of the officer's written request under par. (a), the appropriate authorities having the prisoner in custody shall furnish the officer with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility or date of release to extended supervision of the prisoner, and any decisions of the state parole agency relating to the prisoner. Said authorities simultaneously shall furnish all other officers and appropriate courts in the receiving state who lodged detainers against the prisoner with similar certificates and with notices informing them of the request for custody or availability and of the reasons therefor.

(c) In respect to any proceeding made possible by this subsection, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

(d) Nothing contained in this subsection shall be construed to deprive any prisoner of any right which the prisoner may have to contest the legality of the prisoner's delivery under par. (a), but such delivery may not be opposed or denied on the grounds that the executive authority of the sending state has not affirmatively consented to or ordered such delivery.

(e) If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the

mentioned by any of the parties. (*Id.* at 252, 591 N.W.2d 846). Wisconsin Statute § 976.05 is essentially identical to the IAD statute enacted by the Commonwealth of Pennsylvania, 42 Pa.C.S.A. §§ 9101–9108. As mentioned, *supra,* this topic was not raised in the case at bar until long after the Petitioner was serving his Schuylkill County sentence. Essentially, the issue in *Eesley* was "whether a writ of habeas corpus ad prosequendum constitutes a detainer under the IAD. If it does, the IAD is triggered, and the State must comply with the speedy trial and anti-shuttling provisions of the Agreement. If a writ of habeas corpus ad prosequendum does not constitute a detainer, the IAD is not triggered." (*Id.* at 253, 591 N.W.2d 846). The issue before this court at present is essentially identical. The record reflects that several writs of habeas corpus ad prosequendum were issued at different times by the Court of Common Pleas of Schuylkill County. (*See* Doc. 9, Exs. 2,3,6). The Court is *Eesley* found that "[a] 'detainer' is not defined by the IAD...." *Wisconsin v. Eesley,* 225 Wis.2d at 253, 591 N.W.2d 846 (1999), (cert. denied). We must look to the history of the Agreement to discern the definition. The United States House and Senate reports defined detainer as a "'notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.'" *Eesley,* quoting *U.S. v. Mauro,* 436 U.S. at 359, 98 S.Ct. 1834 (quoting H.R.Rep. No. 91–1018, p. 2 (1970); S.Rep. No. 91–1356, p. 2 (1970), U.S.Code Cong. & Admin.News 1970, 4864, 4865). In contrast to a detainer, a writ of habeas corpus ad prosequendum

is issued by a court "when it is necessary to bring a person who is confined for some other offense before the issuing court for trial." *Black's Law Dictionary* (6th ed.1990) at 709. We rely on the *Eesley* decision in concluding that a detainer and a writ of habeas corpus ad prosequendum are not the same thing. *Id.* at 259, 591 N.W.2d 846. "'A detainer merely puts the officials of the institution in which the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon his release from prison.'" (*Id.* citing *Mauro* at 358, 98 S.Ct. 1834). A detainer is not enough to effectuate the transfer of a prisoner. Something more, such as a writ of habeas corpus ad prosequendum, is necessary to actually obtain the temporary custody of a prisoner. *Id.* Also, because writs must be immediately executed, they are valid for only a short period of time. In contrast, prior to the decision in *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), that a defendant is entitled to a speedy trial though incarcerated elsewhere, detainers could be lodged against a prisoner for a very long time, often for the duration of the prisoner's sentence. *Eesley,* at 259, 591 N.W.2d 846 citing *Mauro,* 436 U.S. at 358–59, 98 S.Ct. 1834. Because of these distinctions, the United States Supreme Court determined that a writ is not a detainer. *Mauro,* 436 U.S. at 349, 98 S.Ct. 1834.

In sum, because a writ is not a detainer, and contrary to the Petitioner's argument, his claim under the IAD must fail. Assuming arguendo that the Petitioner is entitled to the protection of the IAD, his claim still fails because we find that he waived his rights. Petitioner waive his rights by failing to raise the issue at any

---

original place of imprisonment under sub. (5)(e), such indictment, information or complaint shall not be of any further force or

effect, and the court shall enter an order dismissing the same with prejudice.

number of prior proceedings and by verbally relinquishing them at the December 21, 1988 hearing before the Pennsylvania Court of Common · Pleas of Schuylkill County.

In a final matter, the Petitioner filed a motion claiming that Fed.R.App.P. 23 [6] "was violated by respondent Lappin and the United States Marshall Service." (Doc. 24). In his motion the Petitioner seeks a court order ordering the warden (Respondent Lappin) of the USP–Terre Haute, in Terre Haute, Indiana to forward to the Petitioner a box of the Petitioner's case files relating to the matter presently before this Court. (Doc. 24). The Petitioner failed to file a brief supporting his motion. In light of our decision to deny the Petitioner's objections in this matter, the Petitioner's motion is moot and will be denied.

*CONCLUSION*

Based upon the aforementioned discussion, we shall adopt the Report and Recommendation. In addition we shall dismiss the Petitioner's motion pursuant to Fed.R.App.P. 23.

### ORDER

NOW, this 29th Day of May, 2001, it is hereby ORDERED that

1. The Magistrate's Report and Recommendation (Doc. 21) is ADOPTED;

2. Petitioner's motion pursuant to Fed.R.App.P. 23 is (Doc. 24) is DENIED;

3. Petitioner's petition (Doc. 1) is DISMISSED with prejudice;

4. Based on the Court's conclusion herein, there is no basis for the issuance of a certificate of appealability;

5. The Clerk of Court is directed to mark the docket;

6. The Clerk of Court is directed to close this case.

---

**6.** Custody or Release of a Prisoner in a Habeas Corpus Proceeding.